IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

**FILED**

10:10 am, 5/8/26

**Margaret Botkins
Clerk of Court**

JOSE G. ZAMORA,

        Petitioner,

   VS.

SWEETWATER COUNTY SHERIFF, *in his official capacity*, also known as, John Grossnickle,

SWEETWATER COUNTY SHERIFF'S OFFICE,

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT DENVER FIELD OFFICE DIRECTOR, *in his official capacity*, also known as, Robert Hagen,

UNITED STATES CUSTOMES AND IMMIGRATION ENFORCEMENT ACTING DIRECTOR, *in his official capacity*, also known as, Todd Lyons,

UNITED STATES IMMIGRATIONS AND CUSTOMS ENFORCEMENT,

UNITED STATES DEPARTMENT OF HOMELAND SECURITY SECRETARY, *in his official capacity*, also known as, Mark Wayne Mullin

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,

UNITED STATES ATTORNEY GENERAL, *in their official capacity*,

Case No.  26-CV-00122-ABJ

Respondents.

---

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner, Jose G. Zamora. [ECF 1] The Court, having considered Mr. Zamora's Petition, Respondents' Responses [ECF 6 & 8], and Petitioner's Replies [ECF 9 & 10] concludes the petition must be GRANTED.

### *BACKGROUND*

Mr. Zamora is a native and citizen of Mexico. [ECF 1 p. 2; ECF 6 p. 2] He came to the United States in 1989 and has lived here continuously since that time. [ECF 1 p. 2] Mr. Zamora moved to Rock Springs, Wyoming in 2008 where he owns and operates a concrete business. [ECF 1 p. 2] Mr. Zamora raised his four stepchildren, and they are now adults living in the Rock Springs, Wyoming area. [ECF 1 p. 2] On March 27, 2026, a Sweetwater County deputy sheriff stopped Mr. Zamora for driving with a cracked windshield while he was driving home from work. [ECF 1 p. 2] Mr. Zamora carried a driving privilege card from Utah, and a Mexican passport that he presented to the deputy. [ECF 8 ex. 1 p. 3] The deputy detained Mr. Zamora for immigration violations. [ECF 1 p. 2]

### *I. Petition [ECF 1]*

Mr. Zamora filed this petition arguing he is illegally detained. [ECF 1] He seeks relief under two theories. First, he contends the Sweetwater County deputy lacked reasonable suspicion for the initial stop. [ECF 1 pp. 10-14] Mr. Zamora argues the stop was illegal under the Fourth Amendment to the United States Constitution and under the

2

Wyoming Constitution.[1] [ECF 1 p. 13] Mr. Zamora argues an immigration stop must be particularized and objective, and not based on broad profiles that cast suspicion on entire groups of people. [ECF 1 p. 11] He contends immigration officials may only arrest people without a warrant in limited circumstances. [ECF 1 p. 12] Mr. Zamora argues the deputy's stop was unconstitutional because he could not see the crack in the windshield until after he stopped Mr. Zamora's vehicle and he does not claim he had a reasonable suspicion Mr. Zamora was violating immigration law at the time. [ECF 1 p. 13] Second, Mr. Zamora argues he is illegally detained under 8 U.S.C. § 1225(b). [ECF 1 p. 14] He argues 8 U.S.C. § 1226(a) applies to him and, therefore, the officer was required to have a "reasonable belief" he was likely to escape before a warrant could be issued before conducting a warrantless arrest. [ECF 1 pp. 12, 19] He argues his detention violates the Fourth Amendment and he is entitled to immediate release. [ECF 1 pp. 19] Mr. Zamora further contends his detention violates the *Castañon-Nava* settlement agreement. [ECF 1 p. 20] Finally, he argues that, at the very least, he is entitled to a bond hearing in front of an immigration judge [ECF 1 pp. 22-23]

## II. Federal Respondents' Response [ECF 6]

In response, the Government acknowledges courts within this district have determined 8 U.S.C. § 1226(a) applies to non-citizens in Mr. Zamora's position. [ECF 6 pp. 4-5] The Government recognizes one of this district's decisions came out after a contrary determination by a split panel of the Fifth Circuit Court of Appeals. [ECF 6 p. 5]

---

[1] Relief under 28 U.S.C. § 2241 cannot be based on violations of a state constitution. *Davis v. Reynolds*, 890 F.2d 1105, 1109 n. 3 (10th Cir. 1989).

3

It urges this Court to reconsider the position taken by other courts in this district after a recent ruling by the Eighth Circuit. [ECF 6 p. 5] The Government maintains its position that 8 U.S.C. § 1225(b) applies to Mr. Zamora. [ECF 6 p. 4] The Government also argues that even if this Court determines § 1226(a) applies to Mr. Zamora, the correct outcome is a bond hearing in front of an immigration judge, not immediate release. [ECF 6 pp. 5-6]

### III. Respondent Grossnickle's Response [ECF 8]

Sheriff Grossnickle also filed a response. [ECF 8] He argues deputy Cink notified Mr. Zamora that the reason for the stop was that he had a cracked windshield within 7 seconds of making contact. [ECF 8 p. 2] Respondent Grossnickle argues Wyoming law prohibits "operating privilege documents." [ECF 8 p. 3] He contends the privilege card and Mr. Zamora's Mexican passport provided the initial evidence that Mr. Zamora was a citizen of another country. [ECF 6 p. 3] He argues Mr. Zamora's passport contained no stamps that indicated authorized travel. [ECF 8 p. 3] Mr. Zamora then told deputy Cink that he was from Mexico and working on getting immigration documents because his wife is a United States citizen. [ECF 8 p. 3] Deputy Cink contacted ICE who determined it was appropriate to detain Mr. Zamora. [ECF 8 p. 3] Respondent Grossnickle notes that Mr. Zamora was transported to an ICE detention facility in Colorado on April 1, 2026, and the Sweetwater County Sheriff's Department has no authority over his continued detention. [ECF 8 p. 3]

Sheriff Grossnickle argues the initial detention contained the requisite reasonable suspicion for a traffic stop regardless of the independent authority of ICE to detain a non-citizen. [ECF 8 p. 5] He argues the condition of Mr. Zamora's windshield violated

4

Wyoming law § 31-5-955(a) which prohibits driving a car if the windshield has a crack that materially "obstructs, obscures or impairs the driver's clear view of the highway." Wyo. Stat. § 31-5-955(a). Sheriff Grossnickle argues Mr. Zamora has not met his burden of proof of facial plausibility because his petition contains only a mere legal conclusion on that claim. [ECF 8 p. 6] Sheriff Grossnickle then opines that Mr. Zamora should proceed through the regular administrative process before seeking habeas relief. [ECF 8 p. 8] Sheriff Grossnickle also argues the executive branch is authorized to determine if § 1225(b) or § 1226(a) applies and contends Mr. Zamora meets the requirements for detention under § 1225(b).

### IV. Replies [ECF 9 & 10]

Mr. Zamora argues the Federal Respondents did not address his claim that the initial detention was unconstitutional. [ECF 9 pp. 2-4] He contends the Federal Respondents made little effort to defend their position other than citing to the two contrary cases out of the Fifth and Eighth Circuits. [ECF 9 pp. 3-4] Mr. Zamora points out that the Federal Respondents do not acknowledge the Seventh Circuit case that rejected their argument. [ECF 9 pp. 4-5] He also argues the Fifth and Eighth Circuits' reading of the statutes is contrary to the established rules of statutory construction. [ECF 9 pp. 5-6] Finally, he asserts the deputy sheriff failed to follow the requirements outlined by 8 C.F.R. § 236.1(c)(8) which requires the officer to determine whether Mr. Zamora was likely to escape before he obtained an arrest warrant. [ECF 9 p. 6] He contends immediate release is necessary because his arrest was unlawful. [ECF 9 p. 7] Mr. Zamora expresses his

5

concern that he will not be afforded a fair bond hearing under 8 U.S.C. § 1226(a).  [ECF 9 p. 7]

Mr. Zamora also replied to Respondent Grossnickle's Response. [ECF 10] First, he argues any claims against Respondent Grossnickle are largely moot because he is no longer detained at the Sweetwater County Detention Center. [ECF 10 p. 2] Mr. Zamora asserts Respondent Grossnickle's continued participation is only relevant to the conduct of the arresting deputy. [ECF 10 p. 2] He contends Sheriff Grossnickle's response does not negate his assertion that the deputy could not have seen the cracked windshield at the time he initiated the stop. [ECF 10 pp. 2-4] He argues the reasonable suspicion asserted by the deputy was, "at the very least implausible." [ECF 10 p. 3] Next, he contends Respondent Grossnickle's argument under Federal Rule of Civil Procedure 12(b)(6) is contrary to the premise of the rule. [ECF 10 p. 3] Finally, Mr. Zamora reasserts that the deputy ignored his training and failed to investigate whether Mr. Zamora was a flight risk so a warrant could be obtained. [ECF 10 pp. 3-4]

## *DISCUSSION*

Mr. Zamora filed this petition on March 31, 2026. [ECF 1] On April 2, 2026, the Court entered an order requiring ICE to maintain Mr. Zamora's presence in this district pending the outcome of his petition. [ECF 3] Unbeknownst to the Court, on April 1, 2026, ICE transferred Mr. Zamora from the Sweetwater County Detention Center to the Denver CDF in Colorado. [ECF 6 pp. 2-3] As all parties note, Mr. Zamora's transfer out of the district does not divest this Court of jurisdiction.  While generally, jurisdiction over a § 2241 habeas petition rests in the district where the petitioner is located, Mr. Zamora was

6

confined in the District of Wyoming when he filed his petition. 28 U.S.C. § 2241(a). "And '[i]t is well established that jurisdiction attaches on the initial filing for habeas corpus relief' and 'is not destroyed by a transfer of the petitioner.'" *Serna v. Commandant, USDB-Leavenworth*, 608 F. App'x 713, 714 (10th Cir. 2015) (quoting *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985)); *see also e.g., Ex parte Endo*, 323 U.S. 283, 306, 65 S. Ct. 208, 220, 89 L. Ed. 243 (1944) (holding the district court did not lose jurisdiction over the case when petitioner was transferred out of the jurisdiction post-filing and may direct the writ to any respondent within the court's jurisdiction who has legal authority to effectuate the writ); *Rumsfeld v. Padilla*, 542 U.S. 426, 441, 124 S. Ct. 2711, 2721, 159 L. Ed. 2d 513 (2004) (reaffirming the holding in *Endo*). However, Mr. Zamora's transfer to a different facility moots his dispute against Sheriff Grossnickle because Sheriff Grossnickle no longer has immediate custody over Mr. Zamora. *Leonardo G.Z v. Noem*, ---F.Supp.3d----, No. 25-CV-0600-SEH-MTS, 2025 WL 3755590, at *1, n. 1 (N.D. Okla. Dec. 29, 2025) (dismissing sheriff after petitioner was transferred to a different facility and compiling cases).

A writ of habeas corpus under 28 U.S.C. § 2241 may be granted to an individual "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The fundamental purpose of a § 2241 habeas proceeding is to allow a person in custody to attack the legality of that custody." *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012). Mr. Zamora makes two broad categories of argument: first, that the initial stop lacked reasonable suspicion and therefore his detention violated the Fourth Amendment, and second that his detention under 8 U.S.C. § 1225(b)(2)(A) is illegal. The

Court does not address the legality of the stop because, assuming without deciding that the initial stop was valid under the Fourth Amendment, his detention is still unlawful.

### I. Detention is under 8 U.S.C. § 1226(a)

The Immigration and Nationality Act (INA) contains two mechanisms for detaining noncitizens pending removal proceedings. Under § 1225(b)(2)(A), the noncitizen who is "seeking admission" is subject to mandatory detention. 8 U.S.C. § 1225(b)(2)(A) ("in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained.") Noncitizens detained under § 1225 are not entitled to bond hearings. *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Under § 1226, noncitizens arrested and detained "on a warrant by the Attorney General" are eligible for release on bond or conditional parole. 8 U.S.C. § 1226(a). These noncitizens are entitled to an individualized bond hearing before an immigration judge at the outset of their detention. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). There are exceptions to bond or parole eligibility for noncitizens with certain criminal histories or charges. 8 U.S.C. § 1226(c).

Before 1996 and between 1997 and 2025, "successive presidential administrations and many immigration judges treated unadmitted [noncitizens] as being subject to § 1226(a) rather than § 1225(b)(2)." *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498-500 (5th Cir. Feb. 6, 2026). In July of 2025, the Department of Homeland Security began detaining unadmitted noncitizens pursuant to § 1225(b)(2)(A) rather than § 1226(a). *Id.* at 500. This has resulted in thousands of cases in federal courts from petitioners seeking writs

of habeas corpus. The district courts found in favor of the petitioners in almost all cases. *Id.* (citing *Barco Mercado v. Francis*, No. 25-cv-6582, 811 F. Supp. 3d 487, 506 (S.D.N.Y. Nov. 26, 2025) which lists 350 decisions that found for the habeas petitioner); *Cunha v. Freden*, ---F.4th ----, 2026 WL 1146044, *4 (2nd Cir. 2026) (determining that over 370 district judges across the country, over ninety percent, rejected the Government's position).

On February 6, 2026, a split panel on the Fifth Circuit Court of Appeals determined DHS's new interpretation of the Immigration and Nationality Act was lawful. *Buenrostro-Mendez*, 166 F.4th at 508. A split panel of the Eighth Circuit Court of Appeals followed suit on March 25, 2026. *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026). The Government urges this Court to reconsider the position taken by courts in this district after the decisions in *Buenrostro* and *Avila*. The Court is not bound by these decisions, nor does it find their reasoning persuasive.

Respondents admit this case is materially indistinguishable from two other cases out of this district, *Serrato v. ICE et al.*, No. 25-CV-245-SWS (D. Wyo. Nov. 18, 2025) and *Gelashvili v. United States Immigration and Customs Enforcement Denver Field Office Director, et al*, No. 26-cv-00042-SWS (D. Wyo. Mar. 9, 2026). This Court notes that *Gelashvili* was decided after the Fifth Circuit's decision in *Buenrostro*. In both cases, the courts in this district determined that §1226(a) applied to individuals like Mr. Zamora. More recently, the Second Circuit Court of Appeals issued a unanimous panel decision rejecting Respondents' position:

> Today, although we part ways with two other circuits that have addressed this question, we join the overwhelming majority of federal judges across the Nation to consider it and conclude

that the government's novel interpretation of the immigration statutes defies their plain text. That text makes clear that Section 1226(a) governs detention of noncitizens like Petitioner. Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter.

*Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044, at *2 (2d Cir. Apr. 28, 2026).

This Court need not reinvent the wheel. It agrees with the reasoning in *Cunha, Serrato, Gelashvili*, and the hundreds of other courts that have addressed the issue. In short, the "plaint text, . . . structure, history, and purpose" of the INA statutes make clear that § 1225 primarily applies to noncitizens encountered by law enforcement at or near their entry into the United States (whether lawful or unlawful). Section 1226 primarily applies to noncitizens already within the interior of the United States, often, like Mr. Zamora, for long periods of time. *Cunha*, -- F.4th at ----, 2026 WL 1146044; *see also e.g., Nielsen v. Preap*, 586 U.S. 392, 396-97 (2019) (stating that § 1226(a) "applies to most such aliens" who are "present in the country" but removable); *Jennings*, 583 U.S. at 289 (§ 1226(a) and (c) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings").

Section 1225(b)(2)(A) applies to an "applicant for admission" who is "seeking admission" and is not "clearly and beyond doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). While the term "applicant for admission" is defined by the statute and applies to Petitioner, "seeking admission" is not defined and is given its plain meaning. 8 U.S.C, § 1225(a)(1) ("An alien present in the United States who has not been admitted or

10

who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission"); *Cunha*, 2026 WL 1146044 at * 8. As courts addressing this issue have explained, the requirement that a noncitizen be "seeking admission" means they must be currently requesting lawful entry into the United States. *Id.* at *6-*8. Thus, § 1225(b)(2)(A) does not apply to people like Mr. Zamora who are "applicants for admission" under the statute, but who have been present in the United States for years and are not "seeking" entry. *Cunha*, at *6; *Serrato*, 25-CV-00245-SWS, ECF no. 23 pp. 5-7.

As the Court in *Cunha* thoroughly explains, the above interpretation comports with, and is reinforced by, the "broader context and structure of those provisions in the overall statutory scheme." *Cunha*, at *14. One point bears repeating—the Government's interpretation of §1225(b)(2)(A) would render the 2025 Laken Riley Act meaningless. *Serrato*, at ECF no. 23, p. 8; *Cunha*, at *16. Congress amended § 1226(c) in the Laken Riley Act by adding a new category of people to whom mandatory detention applies pending their removal from the United States:

> [A]ny alien who . . . is (i) inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]

11

8 U.S.C. § 1226(c)(1)(E).  As many courts have pointed out, if the Government's interpretation §1225(b)(2)(A) was correct then the 2025 addition of §1226(c)(1)(A)(E) would be pointless. *Serrato*, at ECF 23 pp. 8-9.

For decades, the Government's relevant agencies operated under and enforced this statutory scheme.  *See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled … will be eligible for bond and bond redetermination.").  The Court understands DHS, supported by the Board of Immigration Appeals, has recently changed its decades-long approach, but neither Respondents here, nor the recent decisions from the Fifth and Eighth Circuits, have persuaded this Court that the prior understanding and application of the statutory scheme was erroneous or broken. "The Court joins the many other courts nationwide who have declined to accept Respondents' novel new interpretation of decades-old law." *Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643, at *7 (D. Colo. Oct. 24, 2025) (collecting cases). Consequently, the Court concludes 8 U.S.C. § 1226(a) better applies to Mr. Zamora's case.

## II. Fourth Amendment considerations

In *Serrato* and *Gelashvili*, the court's analysis ended after the consideration of §§1225(b)(2)(A) and 1226.  In those cases, the court granted the petitions and ordered Respondents to give the petitioners individualized bond hearings in front of an immigration judge as is contemplated by §1226(a).  That outcome is what the Respondents argue is available for Mr. Zamora should the Court reject its argument that he is properly detained

12

under §1225(b)(2)(A). Mr. Zamora, however, argues he is entitled to immediate release from detention because he was wrongfully detained in violation of the Fourth Amendment. [ECF 1 pp. 16-21] Respondents do not address this argument in their Response. Having considered Mr. Zamora's position, the Court concludes he is correct.

A growing number of courts across the country have determined "that when DHS detains a noncitizen under § 1226(a) without a warrant and without satisfying § 1357(a)(2), the detention is unlawful from the outset and immediate release is required." *Gustavo Morelos Valdovinos, Petitioner, v. Kristi Noem, et al., Respondents.*, No. 1:26-CV-0338 JB/DLM, 2026 WL 948285, at *7 (D.N.M. Apr. 8, 2026) (compiling cases). Assuming without deciding that the initial stop passed constitutional muster, Mr. Zamora's continued detention is still unreasonable under the Fourth Amendment.

Sweetwater County, Wyoming Sheriff's Deputy, Benjamin Cink, initially stopped Mr. Zamora for driving with a cracked windshield in violation of Wyoming law. He states Mr. Zamora handed him a driving privilege card based in Utah and a Mexican passport that lacked any stamps indicating lawful entry. [ECF 8 ex. 1 p. 3] Deputy Cink suspected Mr. Zamora was violating United States immigration law and called ICE supervisor, Doug Carter, who told Deputy Cink to detain Mr. Zamora on behalf of ICE. Deputy Cink detained Mr. Zamora on behalf of ICE, not for the cracked windshield or lack of a valid driver's license.[2] [ECF 8 ex. 1 pp. 3-4] Neither ICE nor Deputy Cink obtained a warrant to detain Mr. Zamora.

---

[2] Deputy Cink issued Mr. Zamora written warnings for these offenses at the Sweetwater Detention Center. [ECF 8 ex. 1 p. 3]

> The INA authorizes immigration officers to make warrantless arrests only in limited circumstances, including when an immigrant is 'entering or attempting to enter the United States in violation of any law or regulation . . . regulating the admission, exclusion, expulsion, or removal of aliens,' and when the officer has reason to believe the immigrant is in violation of such laws or regulations and is a flight risk. 8 U.S.C. § 1357(a)(2), (5)(A)-(5).

*Salazar v. Dedos*, --- F. Supp. 3d ----, No. 1:26-CV-00251 WJ-JHR, 2026 WL 555336, at *5 (D.N.M. Feb. 27, 2026).   Mr. Zamora contends Respondents made no effort to determine whether he was "likely to escape before a warrant [could] be obtained" prior to his warrantless arrest. 8 U.S.C. § 1357(a)(2); [ECF 1 pp. 6, 8, 19-20] None of the Respondents contend anyone determined that Mr. Zamora was likely to escape before they could obtain a warrant; and Deputy Cink's affidavit does not indicate that likelihood of escape was part of his and ICE agent Carter's decision-making process. *See* ECF. 8 ex. 1.

Respondents' failure to respond to this portion of Petitioner's argument leaves the Court in the dark about the agents' decision-making process.  However, in other cases the Government asserts it did not need to consider the likelihood of escape at the time of arrest because the noncitizen was arrested pursuant to § 1225(b) which does not require a warrant. *Singh v. Bondi*, No. CIV-26-43-J, 2026 WL 483651, at *12 (W.D. Okla. Feb. 12, 2026), report and recommendation adopted, No. CIV-26-43-J, 2026 WL 483482 (W.D. Okla. Feb. 20, 2026).   This Court, however, determined that Mr. Zamora's detention under §1225(b)(2)(A) was improper and he was correctly detained pursuant to § 1226(a) which

14

requires a warrant or, in Mr. Zamora's case, a determination that he was likely to escape[3] before a warrant could be obtained. 8 U.S.C. § 1357(a)(2).

Respondents failed to follow the statutory requirements of §§ 1226(a) and 1357(a)(2). Further, even if the respondents had permissibly executed a warrantless arrest, "the Fourth Amendment requires a prompt judicial determination of probable cause." *Valdovinos*, 2026 WL 948285 at *6. Here, there is nothing in the record, nor does the Government contend there is, that suggests any judicial officer reviewed the basis for Mr. Zamora's detention. *See id.* at * 7. Where, as here, a noncitizen is detained "under § 1226(a) without a warrant and without satisfying § 1357(a)(2), the detention is unlawful from the outset and immediate release is required." *Id.* at *7; *see also*, *Singh*, 2026 WL 483651 at *12; *Guarnizo v. Quinones*, No. 6:26-CV-624-JSS-RMN, 2026 WL 982816, at *1 (M.D. Fla. Apr. 13, 2026); *E.P.G. v. Bondi*, No. 26-560 (JRT-EMB), 2026 WL 242266, at *1 (D. Minn. Jan. 29, 2026); *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025).

## III. Attorney's fees and costs

Mr. Zamora requests attorney's fees and costs under the Equal Access to Justice Act. [ECF 1 p. 24] Respondents do not address Mr. Zamora's request for reasonable attorneys' fees and costs. When Congress enacted the Equal Access to Justice Act (EAJA),

---

[3] Mr. Zamora contends the agents could not have concluded he was likely to escape. Mr. Zamora asserts he is not a flight risk because he has a long history and deep connections to the area, including owning a business and family ties. [ECF 1] Mr. Zamora also states he is not a danger to the community. [ECF 1 p. 5] He admits to three prior misdemeanor DUI citations but states they occurred twenty years ago in California, and he has no criminal history since that time. [ECF 1 p. 5] Respondents offer nothing to rebut these assertions.

it waived sovereign immunity for certain types of fees in civil actions unless "the court finds the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412.  The Tenth Circuit determined "the EAJA's broad language [] unambiguously authorize[s] fees in habeas actions challenging immigration detention." *Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025). While Respondents have done little to defend their position, and they recognize Mr. Zamora's case is materially indistinguishable from previous cases in this district finding the petitioner was detained under § 1226(a), the parties did not brief whether the position of the United States was substantially justified. *Requejo Roman v. Castro*, 816 F. Supp. 3d 1267, 1285 (D.N.M. 2026); *see also Barco Mercado*, 811 F.Supp.3d at 506-07 (awarding fees and costs under the EAJA and finding "Respondents' position does not and has never had a reasonable basis in statutory text, structure, or history. Their position has been rejected with near unanimity in the overwhelming majority of cases across the country.") Thus, Mr. Zamora must submit an application for fees and include his argument for why they are warranted under the EAJA, to which the Government may respond. 28 U.S.C. § 2412(d)(1)(B) ("A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified.

16

Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.").

## *CONCLUSION*

Mr. Zamora is detained pursuant to §1226(a) and, therefore, Respondents were required to obtain a warrant from the attorney general prior to his detention or meet the requirements of §1357(a)(2). Respondents did neither. Therefore, Mr. Zamora's detention was unlawful from the beginning.

**NOW, THEREFORE, IT IS ORDERED** Mr. Zamora's Petition for Writ of Habeas Corpus is **GRANTED.**

**IT IS FURTHER ORDERED**, Respondents **SHALL IMMEDIATELY RELEASE** Petitioner Jose G. Zamora from custody.

**IT IS FURTHER ORDERED**, Respondents shall submit a status report within three days of this Court's order confirming compliance with this Court's order.

**IT IS FURTHER ORDERED**, Petitioner shall submit an application for fees including argument for why they are warranted under the EAJA within thirty (30) days of this Court's order. Respondents have fourteen (14) days from the filing of the application to respond.

17

**IT IS FURTHER ORDERED**, the case against Sheriff Grossnickle is **MOOT**.

Dated this ___8___ day of May, 2026.

Alan B. Johnson
United States District Judge

18